# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
------------------------------x
ROBERTO GONZALEZ-GONZALEZ,    :
                              :
        Petitioner,           :
                              :
    v.                        :    Civ. No. 3:14CV672(AWT)
                              :
UNITED STATES OF AMERICA,     :
                              :
        Respondent.           :
------------------------------x
```

**RULING ON MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE**

Petitioner Roberto Gonzalez-Gonzalez (the "Petitioner"),[1] proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He makes four claims of ineffective assistance of counsel. For the reasons set forth below, the motion is being denied, without a hearing but with leave to file a motion for reconsideration as to Ground One.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Roberto Gonzalez-Gonzalez is a native and citizen of Mexico and has been previously deported from the United States on three occasions: November 12, 2009, July 7, 2011, and November 10, 2011. Upon his removal on November 10, 2011, the Petitioner was advised by the Department of Homeland Security

---

[1] The Petitioner's true name is Luciano Flores Jiminez.

that he was permanently barred from re-entry into the United States based on his prior conviction for an aggravated felony. As reflected in paragraph 34 of the Presentence Report, the Petitioner was convicted for violating the Georgia Controlled Substances Act and was sentenced in Delkab County Superior Court on February 11, 2000 to five years in jail suspended after three years.

On December 5, 2012, the Petitioner was found in the District of Connecticut. He did not seek or obtain permission of the Attorney General or his successor, the Secretary of the Department of Homeland Security, to file an application to re-enter the United States.

On May 7, 2013, a grand jury in the District of Connecticut returned an indictment charging the Petitioner with Reentry of Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). On August 13, 2013, the Petitioner pled guilty and entered into a plea agreement with the government dated August 13, 2013 (the "Plea Agreement"). The Presentence Report calculated the total offense level to be 21. The probation officer determined that the base offense level was 8 pursuant to U.S.S.G. § 2L1.2, and then added 16 levels, pursuant to § 2L1.2(b)(1)(A)(i), because the Petitioner had been previously deported after sustaining a conviction for a felony drug trafficking offense within the previous 15 years

and for which the sentence imposed exceeded 13 months.  Three levels were subtracted pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility.  The probation officer determined that the Petitioner fell within Criminal History Category IV.  The Presentence Report accurately reflected that for a total offense level of 21 and Criminal History Category IV, the advisory range under the Sentencing Guidelines was 57 to 71 months of imprisonment.  However, in the Plea Agreement, the government agreed not to seek a sentence higher than the low-end of the range, i.e. 57 months.  The government also agreed that the Petitioner could challenge the application of the 16-level enhancement.

On November 4, 2013, the court imposed a Guidelines sentence of 57 months, to be followed by supervised release for a period of 3 years.  Both parties reserved their right to appeal and to oppose each other's appeal of the sentence imposed.  No direct appeal was filed.

The Petitioner presents four separate claims: (1) ineffective assistance of counsel for failure to file a direct appeal; (2) ineffective assistance of counsel for failure to argue against the 16-level enhancement; (3) ineffective assistance of counsel for failure to argue that the Petitioner's criminal history was overstated; and (4) ineffective assistance of counsel for failing to argue and

3

investigate the fact that the Petitioner has "mental disabilities". Petition (Doc. No. 1) at 8.

**II. LEGAL STANDARD**

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted). A petitioner may obtain review of his claims if he has raised them at trial or on direct appeal; if not, such a procedural default can be overcome by a showing of "cause" and "prejudice", Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)), or a showing of constitutionally ineffective assistance of counsel, see Murray v. Carrier, 477 U.S. 478, 487-88 (1986); Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255(b). However, district courts may "exercise their common sense", Machibroda v. United States, 368

U.S. 487, 495 (1962), and may draw upon personal knowledge and recollection of the case, see Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition may be dismissed without a hearing if, after a review of the record, the court determines that the allegations are insufficient as a matter of law.

To prevail on an ineffective assistance of counsel claim, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

"The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). Courts should not second-guess

5

the decisions made by defense counsel on tactical and strategic matters. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" Aguirre, 912 F.2d at 561 (quoting Strickland, 466 U.S. at 696-67) (internal citations omitted)).

The second prong of the Strickland test requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a *substantial, not just conceivable*, likelihood of a different result." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (internal quotations and citation omitted) (emphasis added).

**III. DISCUSSION**

    **A. Direct Appeal (Ground One)**

The Petitioner's first claim is for "ineffective assistance of counsel for failing to file for a direct appeal." Petition at 5. The Petition reads as follows:

6

> I told my attorney that 54 months [of imprisonment] were to [sic] much and that I wanted to appeal. But, the attorney advise me to wait and that when one years [sic] pass she will seek a reduction in my sentence. Moreover, she never told me how to appeal, or what an appeal was.

Id.

Although it appears that the signature on the petition is the Petitioner's, the entire petition appears to have been hand-written by someone other than the Petitioner. See also Petition at 13 ("This guy has mental disabilities. Was aided by an inmate at the Library"). In addition, the Petitioner did not submit an affidavit or declaration in support of his claims.

On the other hand, the Petitioner's former counsel avers:

> 8. Contrary to Mr. Gonzalez-Gonzalez's assertion in his habeas motion for ineffective assistance of counsel, I did advise him of his right to appeal. Following the sentencing hearing, I met with Mr. Gonzalez-Gonzalez in the Marshal's lockup with the assistance of a Spanish-speaking interpreter and counseled him regarding his right to appeal. I advised him that in my best professional judgment, I did not see any strong basis for an appeal in his case, but that if he wanted me to file a notice of appeal on his behalf I would do so. I also told him that any such notice of appeal must be filed within 14 days. He did not ever request that I appeal his sentence or conviction. He indicated that he understood, and he further indicated that he accepted the result. He thanked me for my efforts. He never, ever requested that I appeal his sentence or conviction.

> 9. In addition, after his federal sentencing, I continued to work on his behalf by contacting his state criminal defense attorney to assist her to get his state charges dropped in light of the federal resolution. With my help, she was ultimately successful. If the state charges had

7

not been dropped, Mr. Gonzalez-Gonzalez would have been facing a consecutive sentence, and none of the time he had spent incarcerated to date would have counted toward his federal sentence.

Affidavit of Assistant Federal Public Defender Kelly M. Barrett (Doc. No. 7-1) ("Affidavit") ¶¶8-9.

Thus, the affidavit of the Petitioner's former counsel not only contradicts each of the statements in the Petition, painting a very different picture of the meeting in the lockup, but also reflects that counsel continued to work on the Petitioner's behalf after the sentencing and assisted in obtaining a very beneficial outcome for him in state court. The Petitioner never filed any response of any kind to this affidavit.

Moreover, after imposing sentence, the court reviewed with the Petitioner his right to appeal, including the deadline for filing a notice of appeal, and the Petitioner stated that he understood. A Spanish-speaking interpreter assisted in simultaneously translating the proceedings for the Petitioner. However, there is no indication that the Petitioner ever took any steps to attempt to file an appeal after his counsel supposedly neglected to do so.

Also, there is no indication that the Petitioner ever attempted to follow up with his counsel with respect to supposed advice that a sentence reduction could be pursued after a year had passed.

In light of the foregoing, particularly the fact that counsel continued to work on the Petitioner's case after the federal sentencing and that the Petitioner never responded to the affidavit of his former counsel, this case is not one where an evidentiary hearing is necessary or appropriate; on this record the court has no reasonable assurance that the Petitioner stands behind the assertions in the petition.  On the current record, the performance of the Petitioner's counsel did not fall below an objective standard of reasonableness and the motion is being denied as to this claim.  However, had the Petitioner filed an affidavit contesting that filed by his former counsel, the court would have held an evidentiary hearing.  Because failure to file an appeal is a circumstance where a petitioner need not demonstrate prejudice, see McHale v. United States, 175 F.3d 115, 119 (2d Cir. 1999)("In light of Rodriquez and Penson, however, it is clear that the petitioner need *not* demonstrate that, but for the ineffectiveness of counsel, such an appeal would have succeeded or even would have had merit."), the denial as to this claim is without prejudice to the Petitioner filing, within 45 days, a motion for reconsideration, as to this claim only, supported by an  affidavit sufficient to create a genuine issue as to whether he is entitled to relief.

## B. The 16-Level Enhancement (Ground Two)

The Petitioner's second claim is for "ineffective assistance of counsel for failing to argue[] against the 16 point[] enhancement." Petition at 6. The Petition reads as follows: "I told my attorney that the felony was over 15 years old, so that the 16 points enhancement was inapplicable because it did not receive criminal history points." Id.

The government advocated for a 16-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) based on the Petitioner's February 11, 2000 narcotics conviction in state court in Georgia. In the Plea Agreement, the Petitioner reserved the right to appeal the application of that enhancement at sentencing.

U.S.S.G. § 2L1.2(b)(1)(A)(i) provides, in pertinent part:

> If the defendant previously was deported, or unlawfully remained in the United States, after -- a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four.

U.S.S.G. § 2L1.2(b)(1)(A)(i).

The conviction at issue was sustained on February 11, 2000. It was for a state drug trafficking offense, and the sentence imposed exceeded 13 months. In addition, paragraph 34 of the Presentence Report reflects that the Petitioner received three criminal history points on account of this conviction,

10

pursuant to U.S.S.G. § 4A1.1(a). Each of the three occasions on which the Petitioner was deported was after he sustained the conviction in February 2000. Thus, the government was correct in arguing that the 16-point enhancement was appropriate. Defense counsel conceded that the 16-level enhancement was correct and, instead, argued, inter alia, for a downward departure pursuant to Application Note 7 of U.S.S.G. § 2L1.2.

The Petitioner's counsel raised several additional arguments in support of a sentence below the advisory range under the Sentencing Guidelines: first, that proper application of the parsimony clause in § 3553(a) required such a sentence; second, that the illegal re-entry Guidelines "are excessively severe and wrongly promote disparate and disproportionate sentences", and "[t]he excessive nature of this Guidelines range becomes starkly apparent when comparing it to historical and average sentences in immigration offenses, as well to average sentences imposed for all federal criminal offenses nationwide", Memorandum in Aid of Sentencing ("Def's Memo"), Crim. Case No. 3:13CR89(AWT), Doc. No. 30 at 6; third, that the Guidelines calculation involved "double-counting" because the same felony conviction counted for both the 16-level enhancement and for three criminal history points under § 4A1.1; and fourth, that the enhancement lacked a solid policy rationale, citing cases and criminal justice professionals

calling for an amendment to § 2L1.2(b)(1)(A) to avoid disproportionately severe sentences for defendants like the Petitioner.

The performance of the Petitioner's counsel did not fall below an objective standard of reasonableness. Defense counsel's decision to raise these other arguments at sentencing instead of contesting whether the requirements for the 16-level enhancement had been satisfied was a sound one, particularly in light of the evidence supporting the applicability of the enhancement. However, in any event, "[t]he court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689).

### C. The Petitioner's Criminal History (Ground Three)

The Petitioner's third claim is for "[i]neffective assistance of counsel for failing to argue[] against the overstated criminal history." Petition at 8. The Petition reads as follows: "My criminal history was clearly overstated and thus, my attorney failed to argue[] against the criminal history." Id.

However, in her memorandum in aid of sentencing, defense counsel noted that although the Petitioner has a lengthy criminal history, he "has no other drug-related convictions or violent convictions," and that his history "is comprised almost entirely by shoplifting offenses and entirely by non-violent offenses." Def's Memo. at 9, 12. Defense counsel argued further that "[a]lthough Mr. Gonzalez-Gonzalez has been imprisoned before, the longest period of time he [has] actually served in jail was 18 months. Collectively, including all of his prior convictions spread out over the last 20 years, he has served about 34 months in prison." Def's Memo. at 16. Thus, the Petitioner's counsel did, in fact, argue that his criminal history was overstated.

Thus, the performance of the Petitioner's counsel did not fall below an objective standard of reasonableness.

### D. The Petitioner's Mental Health (Ground Four)

The Petitioner's fourth claim is for "ineffective assistance of counsel for failing to argue and investigate that I have mental disabilities". Petition at 9. The Petition reads as follows: "My attorney was well aware[] of my mental incapacitation, and thus, she knew of my incompetence. Therefore, I clearly have mental illness, and thus, I don't know the nature of the proceedings. So, my sentence should have been mitigated." Id.

The Petitioner presented no signs of mental illness or incompetence throughout the proceedings against him. The Presentence Report reflects that during his interview with the probation officer, the Petitioner mentioned "a history of symptoms including anxiety, nightmares, difficulty sleeping and suicidal thoughts" but that at a later mental health screening the Petitioner was "alert, oriented and in anxious mood with no reported history of self-injurious behavior or current suicidal ideation." Presentence Report ¶68. No further intervention was recommended at that time. The Presentence Report also reflected that the petitioner advised that he had never been diagnosed with a mental health disorder, nor received treatment for any mental health condition while in the community.

The petition states that the Petitioner did not understand the nature of the proceedings. However, during his change of plea hearing the Petitioner repeatedly stated that he understood the proceedings and the court's questions and statements. At the time he entered his guilty plea and signed the Plea Agreement, he acknowledged that he fully understand all of the terms and conditions set forth in that agreement. At that proceeding the court confirmed with the Petitioner that he had not recently been under the treatment of a mental health provider, and the Petitioner informed the court that his health

was fine, that his mind was clear and that he understood everything that was happening at that proceeding.

In addition, to the extent that the Petitioner suggests that his defense counsel failed to highlight, for sentencing purposes, any mental health issues he may have, such a contention is not correct. In her memorandum in aid of sentencing, defense counsel argued that the Petitioner's mental health issues, in combination with other factors, weighed in favor of a sentence below the advisory Guidelines range. The memorandum argues that "Mr. Gonzalez-Gonzalez sniffed glue for four years during what we now know to be a crucial stage of the brain's development" (Deft's Memo at 11) and that "although he has never been formally diagnosed with a mental health disorder, Mr. Gonzalez-Gonzalez suffers from anxiety and depression." Deft's Memo at 12.

Thus, the performance of the Petitioner's counsel did not fall below an objective standard of reasonableness.

**IV. CONCLUSION**

For the reasons set forth above, the court concludes that each of the Petitioner's four claims for ineffective assistance of counsel lacks merit, and the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is hereby DENIED but without prejudice to the Petitioner filing, within 45 days, a motion for reconsideration, as to Ground One

15

only, supported by an affidavit sufficient to create a genuine issue as to whether he is entitled to relief. The court will not issue a certificate of appealability because the Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

The Clerk shall enter judgment and close this case.

It is so ordered.

Dated this 13th day of April, 2017, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge